IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bonnie June Godfrey, | ) | C/A No. 1:10-2268-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381–83. The Commissioner contends that substantial evidence supports the decision denying benefits and that he applied proper legal standards in considering Plaintiff's claim. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

## I.    Relevant Background

### A.    Procedural History

Plaintiff seeks appellate review of the Commissioner's unfavorable decision on her October 27, 2006[1] SSI application, in which she alleges disability as of October 1, 2006, based on arthritis, high blood pressure, and colon problems. Tr. at 15–26 (decision), 88–96 (application), 104–12 (Disability Report–Adult). Her application was denied initially and upon reconsideration. Tr. at 56–62. At Plaintiff's request, Administrative Law Judge ("ALJ") Kim D. Parrish held a hearing on June 10, 2009. Tr. at 63–65 (hr'g request), 27–51 (hr'g tr.). The ALJ issued an unfavorable decision on September 22, 2009, finding that Plaintiff had not been disabled within the meaning of the Act since October 27, 2006. Tr. at 25. In a July 3, 2010 letter, the Appeals Council denied Plaintiff's request for review, and Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on August 31, 2010. Tr. at 1–5 (Appeals Council review), Entry #1 (Compl.).

### B.    Plaintiff's Background and Medical History

Born in October 1955, Plaintiff was 53 years old at the time of her September 22, 2009 hearing. Tr. at 30. She completed the seventh grade and has past relevant work ("PRW") as a housekeeper/cleaner and as a general laborer. Tr. at 30, 42–44.

---

[1] The ALJ and the parties refer to October 27, 2006 as the date on which Plaintiff protectively filed her application for SSI benefits. *See* Tr. at 15, Pl.'s Br. at 4, Def.'s Br. at 1. The SSI application of record is dated November 21, 2006. *See* Tr. at 88–96.

On March 17, 2006, prior to Plaintiff's October 1, 2006 alleged onset-of-disability date, she saw Richard Ruffing, M.D., who diagnosed her with hypertension, anxiety with depression, heart palpitations, headaches, and mild osteoarthritis. Tr. at 194. He prescribed Ziac, Lexapro, and Lortab and ordered tests. On March 24, 2006, Plaintiff returned to Dr. Ruffing for follow up, and with new complaints of diffuse abdominal pain with nausea, indigestion, and heartburn. *Id.* On examination, Dr. Ruffing found Plaintiff's abdomen was soft and mildly tender in the epigastric area, with positive bowel sounds with no masses. *Id.* He diagnosed her with complaints of hypertension, anxiety with depression, gastritis, and abdominal pain, scheduled her for an abdominal and pelvic ultrasound, and adjusted her medications—switching her from Lexapro to Effexor-XR and adding Zantac. *Id.* The March 29, 2006 abdominal and pelvic ultrasounds were unremarkable. Tr. at 240.

On July 3, 2006, Plaintiff returned to Dr. Ruffing with complaints of nausea, indigestion, heartburn, painful rectal bleeding, and deep lower back/abdominal pain. Tr. at 193. *Id.* Dr. Ruffing's examination indicated a soft, non-tender abdomen, positive bowel sounds, and no masses. *Id.* He obtained a negative stool and diagnosed Plaintiff with heart palpitations, lower abdominal pain, early indurate skin lesions that could be MRSA (Methicillin-resistant Staphylococcus aureas) or cellulitis, and epigastric pain. *Id.* He recommended a colonoscopy and prescribed medications. Tr. at 193. On July 19, 2006, Plaintiff complained to Dr. Ruffing of intermittent abdominal pain, rectal pain,

possible rectal bleeding, diarrhea, anxiousness, and nervousness. *Id.* Dr. Ruffing diagnosed irritable bowel syndrome ("IBS"), rectal bleeding, hypertension, and anxiety with depression. *Id.*

Plaintiff applied for SSI on October 27, 2006, alleging she became disabled on October 1, 2006. *See* Tr. at 15. On October 26, 2006, she complained to Dr. Ruffing of intermittent diarrhea and some pain in her right hand and elbow. Tr. at 191. She also complained of rectal discomfort and reported she had been unable to get a colonoscopy. *Id.* Dr. Ruffing found she had a soft abdomen, and negative rectal and extremity examinations, good range of motion in her right elbow, adequate strength, and normal reflexes. *Id.* Dr. Ruffing diagnosed IBS, lateral epicondylitis, and osteoarthritis and prescribed FiberCon, Lomotil, and Darvocet. *Id.*

On November 6, 2006, Plaintiff complained to Dr. Ruffing of rectal discharge, a sore on her buttocks, and some diarrhea. *Id.* Dr. Ruffing found she had some perirectal abscess, diagnosed pelvic pain, mild diarrhea, mild skin infection, and non-compliance. He prescribed Cefzil and Lortab and ordered a pelvic CAT scan. *Id.*

On December 28, 2006, Plaintiff complained to Dr. Ruffing of nausea, diarrhea, and rectal pain. Tr. at 229. Dr. Ruffing's notes indicate Plaintiff reported irritable bowel symptomology, but noted she had not undergone a complete work-up to determine whether she had IBS. *Id.* Plaintiff indicated she had not been able to have a colonoscopy or CT scan of her abdomen or pelvis. *Id.* On examination, Dr. Ruffing found Plaintiff's

abdomen was benign with active bowel sounds and that she had no external hemorrhoids and would not allow him to do an internal examination. *Id.* Dr. Ruffing diagnosed rectal pain, irritable bowel symptomology with diarrhea, and gastroesophageal reflux disease. He prescribed Prevacid and Lomotil. *Id.*

On March 18, 2007, Plaintiff went to the emergency room ("ER") with complaints of rectal pain/bleeding and was hospitalized for monitoring and treatment. Tr. at 215–21. A March 18, 2007 abdominal x-ray showed no acute abnormality. Tr. at 225. Dan Karns, M.D. examined Plaintiff on March 20, 2007, noted Plaintiff's history of abdominal pain and that Plaintiff had been noncompliant with follow-up care. Tr. at 217. On examination, he found Plaintiff's bowel sounds were normoactive, and her abdomen was soft, flat, non-tender, without organomegaly or palpable mass. *Id.*

On March 27, 2007, Plaintiff saw Dr. Ruffing for lower abdominal pain, and he found on examination that she had a soft, non-tender abdomen without any masses and no leg edema. Tr. at 226. He diagnosed upper respiratory infection, hypertension, and abdominal pain and prescribed Ziac, P-V-Tussin, Amoxil, and Lortab. *Id.*

On May 10, 2007, Plaintiff saw Dr. Ruffing with complaints of nausea, indigestion, and heartburn. Tr. at 264. She said her blood pressure was much better and she had intermittent abdominal pain. *Id.* She told Dr. Ruffing she was applying for disability and that she felt she was unable to work. *Id.* Dr. Ruffing found she had a soft,

non-tender abdomen and diagnosed gastritis, anxiety, and chronic pain. *Id.* He prescribed Prevacid, Ziac, and Lortab. *Id.*

On June 10, 2007, Plaintiff went to the ER with complaints of shoulder pain. Tr. at 244–257. Bernard Corbett, M.D. found Plaintiff had normoactive bowel sounds and a soft, flat, and non-tender abdomen without organomegaly or palpable mass. Tr. at 246–247. X-rays of Plaintiff's cervical spine and shoulder showed no acute fracture, and showed some degenerative changes of the lower cervical spine and minimal degenerative changes of the lower cervical spine and right acromioclavicular joint. *Id.* Dr. Corbett diagnosed acute muscular spasm, cervical radiculopathy, myofascial strain, and arthralgia, tobacco abuse, and torticollis. *Id.* He prescribed Flexeril, Lortab, and Naprosyn and instructed Plaintiff to follow up with Dr. Ruffing. Tr. at 247.

On June 14, 2007, Plaintiff complained to Dr. Ruffing of pain in her neck, shoulders, and upper arms. Tr. at 264. Dr. Ruffing found she had tender neck muscles with spasm, negative straight leg raising tests, and adequate strength in all of her extremities. *Id.* Dr. Ruffing diagnosed myalgias, arthralgias, and neck pain, and prescribed Soma, Lortab, Celebrex, and Desyrel. *Id.*

On July 3, 2007, Plaintiff complained to Dr. Ruffing of pain and stiffness. Tr. at 263. Dr. Ruffing found she had diffuse tenderness in her large muscles with mild spasm and had good joint ranges of motion and adequate strength. *Id.* Dr. Ruffing diagnosed myalgias and mild osteoarthritis and instructed Plaintiff to cut down on her pain

medications. *Id.* He noted Plaintiff had "a lot of symptom magnification," and told her she needed to get more physically active and to become less dependent on her medications. *Id.* He adjusted her Elavil and prescribed Lortab and Ultram. *Id.*

On September 4, 2007, Plaintiff complained to Dr. Ruffing of chronic pain, chronic diarrhea, rectal pressure, stiffness in her hands, difficulty with muscle movement, and the inability to sit or stand for more than 20 minutes. *Id.* She said she could not bend and had difficulty focusing and concentrating. *Id.* Dr. Ruffing found Plaintiff had diffuse degenerative changes of the upper and lower extremities, a soft and non-tender abdomen, and trace lower extremity edema. *Id.* He diagnosed chronic pain, osteoarthritis, rectal pain, and chronic diarrhea, and he prescribed Lortab, Ultram, and Questran. *Id.*

On September 4, 2007, Dr. Ruffing completed a questionnaire regarding Plaintiff's functional abilities. Tr. at 258–59. He opined Plaintiff could not perform sedentary work on a sustained basis. Tr. at 258. He stated she had pain and stiffness in her hands and that she could only use her hands for a few minutes. *Id.* He said she had knots, numbness, and limited fine muscle movements in her hands. *Id.* He opined she could not stand and walk for more than a few minutes during a workday, noting she was not able to stand up and wash dishes for more than 15 minutes at one time. *Id.* He said her back problems required her to avoid stooping and that she would probably need to rest away from the work station for significantly more than an hour during a workday. Tr. at 259. He said he "doubt[ed] she [could] work for a whole day" and opined she "could not work consecutive days." *Id.*

7

Dr. Ruffing indicated Plaintiff's memory was intact, but that pain limited her ability to concentrate. *Id.* He said that her impairments were caused by osteoarthritis, chronic depression, fibromyalgia, and low back pain, and that he based his opinions on physical examinations of Plaintiff as well as history she provided. Tr. at 259.

On November 20, 2007, Plaintiff saw Dr. Ruffing's colleague, Scott Klosterman, D.O., with complaints of congestion, abdominal pain, and diarrhea. Tr. at 262. Dr. Klosterman noted a history of irritable bowel, gastritis, and an anxiety disorder. *Id.* He found she was in no acute distress, had a benign abdomen with active bowel sounds, and had no clubbing, cyanosis, or edema in any of her extremities. *Id.* Dr. Klosterman diagnosed sinusitis, chronic IBS, gastritis, and depression. *Id.* He prescribed Elavil for fibromyalgia, Celexa, Ziac, Prevacid, and Lortab. *Id.*

On January 17, 2008, Plaintiff saw Dr. Ruffing with complaints of persistent pain and diarrhea. *Id.* Dr. Ruffing found she had a soft abdomen, diagnosed IBS and chronic pain, and prescribed Lortab. *Id.*

Plaintiff returned to Dr. Ruffing on March 18, 2008 for complaints of persistent rectal pain, diarrhea, burning, and chronic pelvic pain. Tr. at 268. He found her physical condition unchanged, diagnosed chronic pain, and prescribed Lortab and Questran. *Id.*

On May 20, 2008, Plaintiff saw Dr. Ruffing in follow-up for chronic pain and diarrhea. *Id.* He found her physical condition unchanged, diagnosed chronic pain and diarrhea, and prescribed Lortab, Questran, and Elavil. *Id.*

On August 30, 2008, Plaintiff saw Dr. Ruffing with complaints of cough, congestion, and rectal pressure. Tr. at 267. He diagnosed acute bronchitis and rectal pain and prescribed Amoxil, Rondec, Lortab, and Ziac. *Id.*

On January 29, 2009, Plaintiff complained to Dr. Ruffing of pain and stiffness in her hands and right knee and of diarrhea, but noted the diarrhea was usually controlled with medications. *Id.* She also complained of neck pain and stiffness. *Id.* Dr. Ruffing's notes indicate there were no objective findings that related to Plaintiff's claimed continued pain and stiffness in her hands. *Id.* On examination, Dr. Ruffing found Plaintiff had good range of motion in her neck, adequate upper extremity strength, and normal reflexes. *Id.* She exhibited no sign of focal deficits, had normal sensation, and a soft, non-tender abdomen. *Id.* Plaintiff's straight leg raising tests were negative, and her right knee x-ray showed some degenerative arthritis. *Id.* Dr. Ruffing prescribed Lortab. *Id.*, 265 (knee x-ray).

On June 2, 2009, Dr. Ruffing stated he had treated Plaintiff from July 2006 to January 2009, and that x-rays showed some osteoarthritis in her right knee. Tr. at 269. As a result, he opined Plaintiff could work in a position requiring walking or standing in combination for more than two hours in an eight-hour workday. *Id.* He indicated she had fibromyalgia, demonstrating multiple trigger points on examination, and that she had intractable diarrhea with eight-to-ten bowel movements per day, which he diagnosed as IBS. *Id.* He said she had a flat affect, and that, because of her depression, chronic pain,

9

and narcotic pain medications, she frequently would have difficulty concentrating during an eight-hour workday. *Id.* He also said her chronic diarrhea would cause her to need to leave the work station frequently. *Id.*

  C. The Administrative Proceedings

    1. Plaintiff's Testimony and Other Evidence

On November 11, 2007, Plaintiff completed a "Function Report—Adult" and described her activities of daily living ("ADLs"). Tr. at 124. She said that upon awakening, she prepared a pot of coffee, brushed her teeth and hair, bathed, dressed, and cooked breakfast for her husband and herself. *Id.* She then prepared lunch for her husband, and then cleaned the kitchen, did laundry, and began cleaning the house. *Id.* She said she prepared her own lunch, such as a sandwich, then later in the day would prepare supper, watch television, shower, and then go to bed. *Id.* She said she had no difficulty dressing, bathing, caring for her hair, shaving, feeding herself, or using the toilet. Tr. at 125. She said she prepared breakfast, which would consist of eggs, grits, sausage, and toast; lunch, which would consist of soup and sandwiches; and dinner, such as roast beef, potatoes, green beans, and rolls for dinner. Tr. at 126. She said she prepared food or meals every day. *Id.* She stated she performed household chores, including cleaning, washing laundry, dusting, sweeping, mopping, ironing, and washing windows. *Id.* She stated she went outside daily, walked, and rode in cars. Tr. at 127. She said she shopped on a weekly basis for two hours or more at a time for food, medications, clothes, and

other household items. *Id.* She said that used to enjoy reading and crafts, but that she had eye trouble that prevented her from doing them without getting headaches. Tr. at 128. She said she went to dinner, movies, and church, but that she did not as often as she did in the past because of diarrhea and pain. *Id.* She said she had difficulty with lifting, squatting, bending, reaching, walking, kneeling, stair climbing, seeing, and using her hands. Tr. at 129. She said she could only walk for 75 feet before needing to stop and rest for 30 minutes. *Id.* She said she could pay attention as long as required and could follow instructions very well. *Id.*

At her June 10, 2009 hearing, Plaintiff said her back pain, knots in her hands and neck, and leg and knee problems made her unable to work. Tr. at 32. She said that her right knee sometimes went out and made her fall, and that she had fibromyalgia. *Id.* She also testified that she had depression and severe diarrhea and intestinal problems. Tr. at 33. She said she had to use the bathroom up to 20 times per day, and she did not think she would be able to work an eight-hour day because of the bathroom issues. *Id.* She testified that she had high blood pressure, which was difficult to control, and sometimes had severe headaches. Tr. at 33–34. She stated she could sit for 30 minutes at one time before experiencing pain, and could sit for two to three hours in an eight-hour day. Tr. at 34. She said she could not stand for very long because of problems with her right knee and with diarrhea, estimating she could stand for about five to ten minutes before experiencing pain in her back and knee, and that she could stand for two to four hours in an eight-hour

11

day. Tr. at 34–35. She estimated she could walk five or ten minutes before her right knee

would go out, and she thought she could walk a total of thirty five or forty minutes a day.

Tr. at 35. She testified that her hands cramped and had knots and pain in them, which

made it difficult to use her arms. *Id.* She indicated she did not have medical insurance and

that her doctor helped her with medicine. Tr. at 35–36. She said her depression affected

her ability to concentrate and focus, and that she did not socialize much. Tr. at 36–37. She

said fibromyalgia caused her excruciating pain. Tr. at 37. Plaintiff said her pain made it

difficult to sleep. Tr. at 38–39. She said that she and her husband prepared microwave

meals for dinner. Tr. at 39. She said she was not able to garden anymore, and that she no

longer attended church as often as she did in the past because of her pain and need to go

to the bathroom frequently. *Id.* She said she did not drive. Tr. at 40.

2.    Testimony of Vocational Expert ("VE")

VE Roy Sumter testified at the hearing and classified Plaintiff's PRW as a

housekeeper as light and unskilled and her PRW in general labor as medium and

unskilled. Tr. at 44. The ALJ asked VE Sumter to assume a hypothetical individual of

Plaintiff's age, education, and work experience, who was limited to a range of light work

with only occasional stooping, kneeling and crouching. This hypothetical individual

would possess concentration necessary for unskilled work. Tr. at 43. The VE testified

such an individual could perform Plaintiff's housekeeping PRW. Tr. at 44. The VE

indicated that such an individual could also perform the jobs of cashier II (61,000 jobs in

South Carolina, 3.5 million nationally), bench assembler (11,500 jobs in South Carolina, 539,000 nationally), and office helper (1,500 jobs in South Carolina, 105,000 nationally). Tr. at 44–45. The VE opined no work would be available for an individual with these limitations and the additional limitation of being unable to stay at a work station for an eight-hour day. Tr. at 45.  Finally, the VE opined that no jobs would be available for an individual with the added limitations of being unable to walk or stand more than two hours per eight-hour day, having eight-to-ten bowel movements per day, and experiencing interruptions in concentration. Tr. at 46.

3.    The ALJ's Decision

In his September 22, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since October 27, 2006, the application date (20 CFR 416.971, *et seq.*).
2.    The claimant has the following severe impairments: irritable bowel syndrome; degenerative disc disease; arthritis; and depression (20 CFR 416.920(c)).
3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b) that includes the following: she has no limitations with climbing, balancing, crawling, reaching, handling, fingering, and feeling. She can stoop and occasionally is able to bend forward at the waist, she can knell and is able to occasionally bend at the knees to come to rest on her knees, and she can crouch and is able to occasionally bend downward by bending her legs and spine. Further, she has no limitations with understanding and with her memory, and she is able to sustain concentration necessary for unskilled work. Also, she has no

limitations with social interaction, adaption, heights/machinery, pollutants, dust and fumes, or temperature/humidity.

5.  The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.  The claimant has not been under a disability, as defined in the Social Security Act, since October 27, 2006, the date the application was filed (20 CFR 416.920(f)).

Tr. at 17–24.

II.    Discussion

Plaintiff alleges the ALJ erred by: (1) failing to give the opinion of Plaintiff's treating physician controlling weight; (2) failing to address whether Plaintiff's fibromyalgia was a severe impairment; (3) submitting an incomplete hypothetical question to the VE in considering whether jobs existed Plaintiff could perform; and (4) improperly assessing Plaintiff's credibility in considering her subjective complaints. The Commissioner counters that substantial evidence supports the ALJ's findings and that her decision is free of legal error.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that, for eligible individuals age 18 or older, benefits shall be available to those who are "under a disability," defined as one who is:

unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

14

42 U.S.C. § 1382c(a)(3)(A).

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to PRW, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. *Id.* If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 416.920(a), (b). The claimant bears the burden of establishing his inability to work within the meaning of the Act. Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence

of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3) (applying § 405(g) judicial review provisions to SSI matters). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at

390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    The ALJ's Evaluation of the Opinions of Plaintiff's Treating Physician

Plaintiff argues the ALJ erred by discounting the opinions of Dr. Ruffing, her treating physician. Pl.'s Br. at 14–21. The Commissioner counters that the ALJ appropriately discussed and discounted those opinions. Def.'s Br. at 11–15.

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 416.927(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner

17

typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

On September 4, 2007, Dr. Ruffing completed a questionnaire in which he opined that Plaintiff could not perform sedentary work on a sustained basis. Tr. at 258–59. He said Plaintiff's use of her hands was limited, she could not stand and walk for more than a few minutes in a workday, and she should avoid stooping. *Id.* He opined Plaintiff would

18

probably need to rest away from the work station for significantly more than an hour during a workday, he doubted she could work for a whole day, and he said she could not work on consecutive days. Tr. at 259. Dr. Ruffing indicated Plaintiff's memory was intact, but that pain limited her ability to concentrate. *Id.* He said Plaintiff's osteoarthritis, chronic depression, fibromyalgia, and low back pain imposed these limitations, and that he based his opinions on his physical examinations of Plaintiff, as well as history she provided. *Id.*

On June 2, 2009, Dr. Ruffing opined that Plaintiff's right-knee osteoarthritis prevented her from walking or standing in combination for more than two hours in an eight-hour workday. Tr. at 269. He also noted that Plaintiff had fibromyalgia and IBS, which he indicated caused Plaintiff to have intractable diarrhea with eight-to-ten bowel movements per day. *Id.* He opined the chronic diarrhea would require her to leave her work station frequently, and that her depression, chronic pain, and narcotic pain medications would cause her difficulty concentrating. *Id.* He noted that he based his opinion on his treatment of Plaintiff from July 2006 through January 2009. *Id.*

In considering Plaintiff's residual functional capacity ("RFC"), the ALJ recounted Plaintiff's medical history, including her treatment by Dr. Ruffing and his June 2, 2009 opinion. Tr. at 19–21. He then discussed her subjective complaints and ADLs in evaluating her credibility. Tr. at 21–22. In evaluating the opinion evidence, the ALJ discussed Dr. Ruffing's September 4, 2007 opinion (Tr. at 23–24), and found:

> Dr. Ruffing's opinions are not given controlling weight for the following reasons. His opinions are not consistent with the record as a whole. There are other factors which contradict his opinions. As reported earlier the claimant is able to perform her daily activities with no apparent difficulties. Dr. Ruffing apparently relied quite heavily on the subjective report of symptoms and limitations provided by claimant in formulating his opinions. Further, despite his opinions of limitations he also reported during an examination of the claimant, there was a lot of symptom magnification.

Tr. at 24.

Plaintiff submits that Dr. Ruffing's opinions should have been given controlling weight because they are not inconsistent with the record as a whole—including Dr. Ruffing's treatment notes and Plaintiff's ADLs. Pl.'s Br. at 14–21. In defense of the ALJ's decision, the Commissioner cited to portions of several of Dr. Ruffing's treatment records as supportive of the ALJ's findings. *See* Def.'s Br. at 13–14. Having considered the record evidence, the ALJ's decision, and the parties' briefs, the undersigned agrees with Plaintiff and recommends this matter be remanded for additional consideration.

Dr. Ruffing treated Plaintiff for more than three years, and he based his opinions on that long-standing treatment relationship. Tr. at 269 (Dr. Ruffing's June 2, 2009 opinion, noting he had treated Plaintiff from July 2006 through January 2009). He twice opined that Plaintiff's impairments of osteoarthritis, fibromyalgia, pain, and depression limited her such that she would not be able to remain at a work station for an eight-hour workday and would not be able to maintain a job. *Id.*, Tr. at 258–59 (Dr. Ruffing's September 2007 opinion). In his later opinion, he also discussed specific limitations caused by Plaintiff's

IBS symptoms of chronic diarrhea with eight-to-ten bowel movements. Tr. at 269 (opining Plaintiff's chronic diarrhea would cause her to need to leave the work station frequently).

Dr. Ruffing examined Plaintiff numerous times in a three-year span, which gave him opportunities to observe, examine and treat her. *See* Tr. at 191, 193–94, 226, 262–64, 267–68 (records of appointments with Dr. Ruffing from 2006 through January 2009). His treatment records included ordering and reviewing objective medical tests such as June 10, 2007 x-rays of Plaintiff's cervical spine that showed degenerative changes at C5-6 and C6-7 with carotid calcifications, and right-knee x-rays from January 29, 2009, which indicated moderate loss of the medial joint space, consistent with osteoarthritis, but indicated no acute abnormalities. Tr. at 257, 265.

Further, Dr. Ruffing included frank notes about Plaintiff's complaints when they were not substantiated with objective findings (Tr. at 267), or when he believed Plaintiff was magnifying symptoms (Tr. at 263). The ALJ cited to Dr. Ruffing's July 2, 2007 note that Plaintiff had "a lot of symptom magnification" as demonstrating that his opinions were not supported by substantial evidence. Tr. at 24. However, the undersigned agrees with Plaintiff's argument that such statements by Dr. Ruffing demonstrate that he did not rely heavily on Plaintiff's subjective reports of her symptoms in rendering his opinions. *Cf.* Tr. at 24 (ALJ discounting Dr. Ruffing's opinion in part because he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] in formulating his opinions.").

21

The Commissioner offers various citations to Dr. Ruffing's treatment records as support for the ALJ's discounting Dr. Ruffing's opinions because they were "not consistent with the record as a whole." Def.'s Br. at 13–14. However, in his decision, the ALJ did not provide specific citations to Dr. Ruffing's treatment records or other medical evidence as support for his finding that Dr. Ruffing's opinions were not entitled to controlling weight because the opinions were not consistent with the record as a whole, *inter alia*. Tr. at 24. The Commissioner's post-hoc rationalization does not remedy the deficient analysis by the ALJ. *Steel v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Additionally, as Plaintiff points out, Dr. Ruffing was the only source—treating or consulting—who offered an opinion regarding Plaintiff's physical limitations. Pl.'s Br. at 21. The only other opinion evidence the ALJ referenced was the opinion of state agency consultant, Lisa Varner, Ph.D., who reviewed Plaintiff's records and opined that Plaintiff did not have a severe mental impairment. Tr. at 23, 201–14. The undersigned finds that the ALJ's discounting Dr. Ruffing's opinions is not based on substantial evidence.

The ALJ also found Dr. Ruffing's opinions were inconsistent with Plaintiff's reported ADLs. Tr. at 24. Presumably referring to the portion of his opinion in which he set out Plaintiff's January 11, 2007 responses to the SSA's Function Report–Adult questionnaire, the ALJ found Plaintiff could perform her ADLs "with no apparent

difficulty." Tr. at 24, referring to 21–22 (discussing Function Report–Adult, available at 124–31).

Plaintiff argues the ALJ's finding is not based on substantial evidence and that the ALJ erred by focusing only on specific ADLs she described in the January 2007 Function Report–Adult. He did not discuss her responses to other SSA forms or her hearing testimony. The undersigned agrees and cannot conclude that substantial evidence exists to support the ALJ's findings that Plaintiff's ADLs undermine Dr. Ruffing's opinions regarding her limitations.

Plaintiff indicated in her April 4, 2007[2] responses to a Disability Report–Appeal that her intestinal condition, arthritis, and heart pain continued to get worse. Tr. at 139. In another Disability Report–Appeal, dated August 1, 2007,[3] Plaintiff said her arm, shoulder, neck, and knee were getting worse. Tr. at 146. She referenced an ER visit and an additional visit to Dr. Ruffing and stated it was becoming more difficult for her to do simple tasks because of the pain in her arm and hands, her diarrhea, and pain in her behind. Tr. at 147, 149. She told the examiner that she needed help doing house work and cooking "a lot of the time." Tr. at 149. This is consistent with Plaintiff's hearing testimony that her husband helped her a lot with meal preparation at home and that she did not go to church as often as she used to because of pain and having to run to the bathroom. Tr. at 39.

---

[2]This Disability Report–Appeal in the record does not indicate when it was completed. *See* Tr. at 135–41. The Court Transcript Index indicates it is dated April 4, 2007.

[3]Again, this Disability Report–Appeal is undated, but the Court Transcript Index indicates it was completed on August 1, 2007.

Plaintiff also testified at the hearing that it was difficult to concentrate because she was in pain all of the time. Tr. at 37. This testimony is consistent with Dr. Ruffing's September 4, 2007 treatment note that Plaintiff not have any significant memory problems, but had "difficulty focusing and concentrating because of her pain" (Tr. at 263) and his June 2, 2009 opinion that Plaintiff had "great difficulty concentrating on anything over an 8 hour work day" and would "suffer from frequent interruptions to her concentration." Tr. at 269.

Based on a review of the record, the undersigned cannot recommend finding that the ALJ's rejection of Dr. Ruffing's opinions is based on substantial evidence. *See Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) (reversing ALJ's determination that claimant could perform sedentary work that was based in part on claimant's ability to do housework and shopping at her own pace and manner and when taking pain medication).

The undersigned further finds that the ALJ did not adequately discuss the limitations from Plaintiff's IBS and frequent diarrhea or the impact that condition would have on Plaintiff's RFC. In cataloging Plaintiff's medical history, he references Dr. Ruffing and Dr. Klosterman diagnosing her with IBS. Tr. at 20 (referring to ex. 12F/3–4, available at 262–63). He also references Dr. Ruffing's June 2, 2009 opinion that Plaintiff's IBS and intractable diarrhea that caused 8-to-10 bowel movements per day would require her to leave her work station frequently. Tr. at 20–21 (referring to ex. 15F, available at 269)).

By finding IBS was one of Plaintiff's multiple severe impairments (Tr. at 17), the ALJ found it "significantly limit[ed]" Plaintiff's ability to do basic work activities. *Cf.* 20 C.F.R. § 416.921(a) (defining a non-severe impairment as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities."). However, he did not reference Plaintiff's need to be able to frequently leave her work station to use the bathroom in discussing her RFC, nor did the limitations he placed on her RFC take that limitation into account. *See* Tr. at 18.

Importantly, the ALJ not discuss any portion of Dr. Ruffing's June 2, 2009 opinion. *See* Tr. at 22–24. Although the ALJ said he discounted Dr. Ruffing's opinions, he only discussed the September 4, 2007 opinion in that context. Tr. at 24. After setting out the legal standards applicable to his consideration of opinion evidence, the ALJ indicated he considered the opinion of state agency consultant Lisa Varner and the September 4, 2007 opinion of Dr. Ruffing. Tr. at 23–24 (referencing ex. 5F (Dr. Varner's completed Psychiatric Review Technique Form, available at 201–14), 11F (Dr. Ruffing's Sept. 4, 2007 op., available at 258–59). Dr. Ruffing's September 4, 2007 opinion does not reference Plaintiff's IBS or frequent diarrhea. However, his subsequent opinion rendered on June 2, 2009 discusses Plaintiff's IBS and chronic diarrhea and attributes specific limitations to that impairment. Tr. at 269. Although the ALJ generally references Dr. Ruffing's June 2, 2009 entry in setting out Plaintiff's medical history, he does not call it an opinion when referencing it. Tr. at 20–21.

Accordingly, the undersigned cannot determine whether the ALJ adequately considered Plaintiff's IBS and its limitations Dr. Ruffing found they had on her RFC, and cannot determine that the ALJ's findings are supported by substantial evidence. The undersigned recommends remand. On remand, the ALJ should specifically discuss Plaintiff's IBS and its impact on her work abilities. *See Amerson v. Astrue*, No. 3:09-2857-HMH, 2010 WL 5136218 (D.S.C. Dec. 7, 2010) (remanding for ALJ to consider and explain impact of claimant's IBS on his ability to work). Further, he should consider both of Dr. Ruffing's opinions in conjunction with all evidence concerning Plaintiff's ADL, including her claimed limitations caused by her IBS and other impairments considered in combination.

### 2.     Plaintiff's Additional Allegations of Error

Plaintiff also argues that the ALJ erred by not finding fibromyalgia to be a severe impairment, that the question to the VE did not contemplate the limitations of Plaintiff's IBS, and that the ALJ did not appropriately evaluate Plaintiff's credibility. Based on the undersigned's recommendation for remand and further consideration of Dr. Ruffing's opinions in light of all of Plaintiff's impairments and further evaluation of Plaintiff's subjective complaints, the court does not evaluate these allegations separately. On remand, the ALJ should expressly discuss Plaintiff's claimed fibromyalgia, determine whether it is a severe impairment, and consider whether it, alone or combined with Plaintiff's other impairments, limits her RFC. *See*, *e.g.,* Tr. at 37 (Pl.'s testimony regarding fibromyalgia), 262 (Dr. Klosterman's finding of fibromyalgia), 259, 269 (Dr.

Ruffing's opinions regarding Plaintiff's limitations from fibromyalgia, *inter alia*). Further, as discussed above, the ALJ should specifically consider Plaintiff's IBS and related symptoms, including Dr. Ruffing's opinion regarding the same and Plaintiff's subjective testimony regarding limitations on her abilities.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action as discuss within.

IT IS SO RECOMMENDED.

December 9, 2011                                        Shiva V. Hodges
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**