IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Bonnie June Godfrey, ) | Civil Action No. 1:10-CV-2268-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Michael J. Astrue, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Bonnie June Godfrey challenges a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court reverses the decision of the Commissioner.

## I. BACKGROUND

On November 21, 2006, Plaintiff filed an application for SSI, with a protective date of October 27, 2006, and an alleged onset date of October 1, 2006. R. 15 & 88. Plaintiff claimed that she was unable to work due to arthritis, high blood pressure, and colon problems. R. 105. Plaintiff's claim was denied on February 2, 2007. R. 56. Plaintiff requested reconsideration, and her claim was denied again on June 13, 2007. R. 61. After retaining counsel, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). R. 63. The ALJ held a *de novo* hearing on June 10, 2009. R. 27-51.

**A.    Plaintiff's Testimony Before the ALJ**

Plaintiff testified at the hearing that she would get knots in her hands, and that her hands would start hurting badly and cramping if she used them for a short time. R. 32. Plaintiff

testified that she also had pain in her back and legs, especially her right knee. *Id.* Plaintiff testified that she had severe diarrhea as well as stomach and intestinal problems, and that she might have to use the bathroom up to twenty times in a day. R. 33. Plaintiff testified that she had severe headaches and high blood pressure that was difficult to regulate. R. 33-34. Plaintiff also testified that she had been diagnosed with fibromyalgia. R. 32.

Plaintiff testified that she could only sit for about thirty minutes without hurting and needing to get up and move around. R. 34. Plaintiff testified that she could probably only sit between two or three hours total in an eight-hour workday. *Id.* Plaintiff testified that she could only stand for five to ten minutes at a time because of problems with her right knee, back, and intestines. R. 34-35. Plaintiff testified that she could probably only stand for two to four hours total in an eight-hour workday. R. 35. Plaintiff testified that she could only walk for five to ten minutes at a time, and that she could not walk for more than thirty-five to forty minutes total in an eight-hour workday. *Id.* Plaintiff testified that she had problems using her hands and arms for tasks such as pushing and pulling due to swelling and pain. *Id.*

Plaintiff testified that on a scale of one to ten, the pain in her hands and right knee sometimes reached ten, and that she sometimes had to go to the emergency room. R. 37. She stated that "it just feels like your body locks up and you can't move. That's fibromyalgia, it feels like your bones are crushing. And when you move, it's excruciating pain." *Id.* Plaintiff testified that she would start hurting if she stayed in one position or if she moved around and engaged in activities. R. 37-38. Plaintiff testified that there were times when she might go to the emergency room two or three times within a week. R. 38.

Plaintiff testified that her husband helped her prepare meals often, and that the two of

them bought many microwave meals.  R. 39.  Plaintiff testified that she used to enjoy crafts, flea marketing, and gardening, but that she was no longer able to do these things.  *Id.*  Plaintiff testified that she did not go to church as often as before because of her pain and her need to use the bathroom frequently.  *Id.*  Plaintiff testified that she was not really able to drive, and that she had not driven in about seven years.  *Id.*  Plaintiff testified that her conditions had worsened since her disability onset date, especially in the past year.  *Id.*

**B.     Medical Evidence Before the ALJ**

The ALJ considered the following medical evidence:

- In a September 2002 visit with Dr. Moss, Plaintiff reported a fluttering and racing heart and sharp rectal pain that would wake her up at least once each week.  R. 186.

- In a February 2003 visit with Dr. Moss, Plaintiff reported nerve problems, hot flashes, continued rectal pain, and trouble with sleeping.  R. 185.

- In a May 2003 visit, Dr. Moss diagnosed headache, depression/anxiety, stress, and uncontrolled hypertension.  R. 184.

- In a March 17, 2006 visit with Dr. Ruffing, Plaintiff reported high blood pressure, palpitations, headaches, anxiety, and stress.  Dr. Ruffing observed: "Abdomen is soft, non-tender.  No masses.  Full range of motion in the upper and lower extremities.  Adequate strength.  Reflexes are plus two."  Dr. Ruffing diagnosed hypertension, anxiety with depression, palpitations, headaches, and mild osteoarthritis.  R. 194.

- In a March 24, 2006 visit with Dr. Ruffing, Plaintiff reported high blood pressure, diffuse abdominal pain, nausea, indigestion, and heartburn.  Dr. Ruffing observed: "Abdomen is soft.  [Plaintiff] is mildly tender in the epigastric area.  Positive bowel sounds.  No masses."  Dr. Ruffing diagnosed hypertension, anxiety with depression, gastritis, and abdominal pain.  R. 194.

- In a July 3, 2006 visit with Dr. Ruffing, Plaintiff reported nausea, indigestion, heartburn, rectal bleeding with pain, deep pain in her lower back and abdomen, and palpitations.  Dr. Ruffing observed: "Abdomen is soft, non-tender.  Positive bowel sounds.  No masses.  I obtained negative stool."  Dr. Ruffing diagnosed palpitations, lower abdominal pain, "early indurate skin lesions that could be a MRSA or cellulitis" and epigastric pain, and recommended a colonoscopy.  R. 193.

- In a July 19, 2006 visit with Dr. Ruffing, Plaintiff reported intermittent abdominal pain, rectal pain and possible bleeding, diarrhea, anxiety, and nervousness. Dr. Ruffing observed : "Abdomen is soft, non-tender. No masses. Rectal examination: soft liquidly stools, guaiac negative. No hemorrhoids. Legs have no edema. Full range of motion in the upper and lower extremities. Adequate strength." Dr. Ruffing diagnosed irritable bowel syndrome, anxiety with depression, rectal bleeding, and hypertension. R. 193.

- In an October 26, 2006 visit with Dr. Ruffing, Plaintiff reported intermittent diarrhea, rectal discomfort, and some pain her right hand and elbow. Plaintiff also reported that she had been unable to get the recommended colonoscopy. Dr. Ruffing observed: "Abdomen is soft. Rectal examination: soft, stool guaiac negative. Extremities are negative. Good range of motion of the right elbow. Adequate strength. Reflexes are plus two." Dr. Ruffing diagnosed irritable bowel syndrome, lateral epicondylitis and osteoarthritis. R. 191.

- In a November 6, 2006 visit with Dr. Ruffing, Plaintiff reported rectal discharge, a sore on her buttocks, and some diarrhea. Dr. Ruffing observed: "[A]bdomen is soft. Rectal examination: her buttock has some perirectal abscess that is draining. Soft stool, guaiac is negative. No impaction." Dr. Ruffing diagnosed abdominal and pelvic pain, mild diarrhea, mild skin infection, and non-compliance. R. 191.

- In a December 28, 2006 visit with Dr. Klosterman, Plaintiff reported nausea, diarrhea, and rectal pain. Dr. Klosterman observed: "The abdomen is benign with active bowel sounds. Rectal examination shows no external hemorrhoids." Dr. Klosterman noted that Plaintiff would not allow him to perform an internal examination. Dr. Klosterman diagnosed rectal pain, irritable bowel symptomatology with diarrhea, and gastroesophageal reflux disease. R. 229.

- On March 18, 2007, Plaintiff went to the emergency room with complaints of rectal pain and bleeding and was hospitalized for treatment and monitoring. R. 215-225. An abdominal x-ray showed no acute abnormality. R. 225. A March 20, 2007 examination by Dr. Karns found: "Bowel sounds are normoactive. Abdomen is soft, flat, non-tender, without organomegaly or palpable mass." R. 217.

- In a March 27, 2007 visit with Dr. Ruffing, Plaintiff reported lower abdominal pain, cough, and congestion. Dr. Ruffing observed: "Abdomen is soft, non-tender. No masses. Legs have no edema." Dr. Ruffing diagnosed upper respiratory infection, hypertension, and abdominal pain. R. 229.

- In a May 10, 2007 visit with Dr. Ruffing, Plaintiff reported nausea, indigestion, heartburn, and intermittent abdominal pain. Plaintiff stated that she felt she was unable to work, and was applying for disability. Dr. Ruffing observed: "Abdomen is soft, non-tender. No masses." Dr. Ruffing diagnosed gastritis, anxiety, and chronic pain. R. 264.

- On June 10, 2007, Plaintiff went to the emergency room with complaints of shoulder pain. R. 244-257. An examination by Dr. Corbett found: "Bowel sounds are normoactive. Abdomen is soft, flat, non-tender, without organomegaly or palpable mass." R. 246. X-rays showed no acute fractures, but moderate degenerative changes throughout Plaintiff's entire cervical spine. *Id.* Dr. Corbett diagnosed acute muscular spasm, cervical radiculopathy, myofascial strain, arthralgia, tobacco abuse, and torticollis. *Id.*

- In a June 14, 2007 visit with Dr. Ruffing, Plaintiff reported pain in her neck, shoulders, and upper arms. Dr. Ruffing observed: "[T]ender neck muscles. Positive spasm. Negative straight leg raises. Adequate strength of the upper and lower extremities." Dr. Ruffing diagnosed myalgias, arthralgias, and neck pain. R. 264.

- In a July 3, 2007 visit with Dr. Ruffing, Plaintiff reported pain and stiffness. Dr. Ruffing observed: "[D]iffuse large muscle[] tenderness. Mild spasm. Good range of motion. Adequate strength." Dr. Ruffing diagnosed myalgias and mild osteoarthritis. Dr. Ruffing also noted that Plaintiff "has a lot of symptom magnification" and that she needed to become more physically active and cut down on her pain medicine. R. 263.

- In a September 4, 2007 visit with Dr. Ruffing, Plaintiff reported chronic pain, chronic diarrhea, rectal pressure, pain and stiffness in her hands, and difficulty with muscle movement. Plaintiff reported that she could not sit or stand for more than 20 minutes, that she could not bend over consistently due to her lower back problems, and that she had difficulty focusing and concentrating because of her pain. Dr. Ruffing observed: "[D]iffuse Degenerative changes of the upper and lower extremities. Abdomen is soft, non-tender. There is trace edema in the lower extremities." Dr. Ruffing diagnosed chronic pain, osteoarthritis, rectal pain, and chronic diarrhea. R. 263.

- On September 4, 2007, Dr. Ruffing completed a questionnaire dealing with Plaintiff's functional abilities. R. 258-259. Dr. Ruffing opined that Plaintiff could not perform even sedentary work on a sustained basis for eight hours per day and five days per week. He stated that Plaintiff had pain and stiffness in her hands and could only use her hands for a few minutes. He also noted knots, numbness, and limited fine muscle movement in Plaintiff's hands. He stated that Plaintiff could not stand and walk for more than a few minutes during a workday, noting that she could not stand for more than 15 minutes at a time or stand to wash dishes. He stated that Plaintiff must avoid stooping due to her back problems. He stated that he doubted Plaintiff could work a whole day, and opined that if she tried she would probably have to rest away from her work station for "significantly more than an hour during the working portion of the day." He further opined that Plaintiff could not work consecutive days. He stated that Plaintiff's memory was adequate, but that pain limited her ability to concentrate. He stated that Plaintiff's impairments were caused by osteoarthritis, chronic depression, fibromyalgia, and lower back pain, and based his opinions on physical examinations as well as the history provided by Plaintiff.

5

- In a November 20, 2007 visit with Dr. Klosterman, Plaintiff reported congestion, abdominal pain, and diarrhea.  Dr. Klosterman noted Plaintiff's history of irritable bowel syndrome, gastritis, and anxiety disorder.  Dr. Klosterman found that Plaintiff was in "no acute distress," and observed: "Abdomen is benign with active bowel sounds. . . . No hernia.  Extremities show no clubbing, cyanosis, or edema."  Dr. Klosterman diagnosed sinusitis, chronic irritable bowel syndrome, gastritis, and depression.  R. 262.

- In a January 17, 2008 visit with Dr. Ruffing, Plaintiff reported diarrhea and persistent pain in her right arm, neck, and abdomen.  Dr. Ruffing observed that Plaintiff had a soft abdomen and diagnosed irritable bowel syndrome and chronic pain.  R. 262.

- In a March 18, 2008 visit with Dr. Ruffing, Plaintiff reported persistent rectal pain, diarrhea, burning, and chronic pelvic pain.  Dr. Ruffing found her condition unchanged and diagnosed chronic pain.  R. 268.

- In a May 20, 2008 follow-up visit with Dr. Ruffing, Plaintiff reported continued rectal pain.  Dr. Ruffing found her condition unchanged and diagnosed chronic pain and chronic diarrhea.  R. 268.

- In a September 30, 2008 visit with Dr. Ruffing, Plaintiff reported a cough, congestion, and rectal pain and pressure.  Dr. Ruffing diagnosed acute bronchitis and rectal pain.  R. 267.

- In a January 29, 2009 visit with Dr. Ruffing, Plaintiff reported pain and stiffness in her hands, neck, and right knee and frequent diarrhea.  Dr. Ruffing observed: "[G]ood range of motion of the neck.  Adequate strength in the upper extremities.  Reflexes are plus two.  There is no sign of any focal deficits.  Normal sensation.  Abdomen is soft non-tender.  Her back is non-tender.  Negative straight leg raising.  Reflexes are plus two.  X-ray of the right knee performed and it does show some degenerative arthritis.  Her back was not x-rayed because she is having minimal back pain.  She complains of a lot of pain and stiffness in her hands, but there are no objective findings there."  R. 267.

- On June 2, 2009, Dr. Ruffing provided the following statement:  "I have treated [Plaintiff] from 07/03/06 to 01/29/09.  Her X-ray report shows some osteoarthritis in her right knee.  Because of this condition, I do not think she should work in a position that would require her to walk or stand in combination for more than 2 hours out of an 8 hour work day.  She also complains of fairly significant back pain that is probably mechanical and weight related, but we do not have imaging to show one way or another.  She suffers from Fibromyalgia an[d] she exhibited multiple trigger points on examination.  She complains of chronic diarrhea that is intractable with 8-10 bowel[] movements per day, which I have diagnosed as irritable bowel syndrome.  She presents to me as depressed with flat affect.  With her depression, chronic pain and narcotic pain medications, she would have great difficulty concentrating on anything over an 8 hour work day.  I think

that she would suffer from frequent interruptions to her concentration. She also has this chronic diarrhea that would cause her to need to leave the work station frequently." R. 269.

**C.     Plaintiff's Reported Functional Abilities**

In a January 11, 2007 "Function Report – Adult," Plaintiff described her daily activities and limitations. R. 124-131. Describing a typical day, Plaintiff stated that she would wake up and put on a pot of coffee, brush her teeth and hair, and then bathe and get dressed. R. 124. Plaintiff stated that she would cook breakfast for herself and her husband and prepare lunch for him before he left for work. *Id.* Plaintiff stated that she would clean the kitchen, do laundry, and start cleaning the house, and maybe eat a sandwich for lunch. *Id.* Plaintiff stated that she would later prepare and eat supper, watch television, shower, and go to bed. *Id.*

Plaintiff also stated that because of her illnesses, she was no longer able to "walk and use [her] hands a lot." R. 125. Plaintiff stated that pain in her hands and legs prevented her from lifting, reaching, and other things, and that her diarrhea and the pain in her intestines and stomach prevented her from walking. R. 129. Plaintiff stated that she no longer went out very often because of her pain and diarrhea, usually only to shop for food and other items. *Id.* Plaintiff stated that she was able to do many household chores, but that the time needed to complete them depended on her condition and her level of pain. R. 126. Plaintiff stated that she enjoyed having dinner with others, going to movies, shopping, and going to church, but that she had not done these things very often since she had been sick. R. 128. Plaintiff stated that her illnesses and health problems affected her lifting, squatting, bending, reaching, walking, kneeling, stair climbing, seeing, and using her hands. R. 129. Plaintiff stated that she could pay attention for as long as she needed to. *Id.*

In an April 4, 2007 "Disability Report – Appeal," Plaintiff stated that there had been a change in her conditions since her last disability report. R. 135-136. Plaintiff stated that there was more pain in her intestine, arthritis in her joints, and trouble with her heart. R. 136. Plaintiff stated that her pain was worse and that she would drop things due to the pain in her hands. *Id.* Plaintiff also stated that there was new pain in her chest and back, and that her heart would beat rapidly and skip. *Id.*

In an August 1, 2007 "Disability Report – Appeal," Plaintiff stated that her arm, shoulder, neck, and knee were getting worse. R. 145-146. Plaintiff also stated that she had new problems with her muscles and with arthritis. R. 146. Plaintiff stated that it was getting harder to do simple tasks due to her diarrhea and the pain in her arm, hands, and rectum. R. 149.

**D.     The ALJ's Decision**[1]

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January October 27, 2006. R. 17. The ALJ also found that Plaintiff has multiple severe impairments, specifically irritable bowel syndrome, degenerative disc disease, arthritis, and depression. *Id.* However, the ALJ found that Plaintiff's condition did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (a "Listed Impairment"). *Id.* In particular, the ALJ found that Plaintiff did not meet the criteria for listings 1.02A (major dysfunction of joint – major peripheral weight-bearing joint), 1.02B (major dysfunction of joint – one major peripheral joint in each upper extremity), 1.04A (disorder of the spine – nerve root

---

[1] The ALJ found that Plaintiff had moderate limitations in maintaining concentration, persistence, and pace. R. 23. Because the Court reverses the Commissioner's decision based only on the ALJ's analysis of Plaintiff's physical limitations, the Court does not consider Plaintiff's mental limitations further or discuss the psychiatric report submitted by Dr. Lisa Varner. See R. 201-214.

compression), 5.06 (irritable bowel disease) or 12.04 (affective disorders). *Id.*

The ALJ found that Plaintiff "has the residual functional capacity to perform a wide range [of] light work" because "she has no limitations with climbing, balancing, crawling, reaching, handling, fingering, and feeling." R. 18. The ALJ found that Plaintiff "can stoop and occasionally is able to bend forward at the waist"; "can kneel and is able to occasionally bend at the knees to come to rest on her knees"; and "can crouch and is able to occasionally bend downward by bending her legs and spine." *Id.* The ALJ found that Plaintiff "has no limitations with understanding and with her memory, and . . . is able to sustain concentration necessary for unskilled work." The ALJ found that Plaintiff "has no limitations with social interaction, adaptation, heights/machinery, pollutants, dust and fumes, or temperature/humidity." *Id.* The ALJ stated that "[i]n making this finding, [he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

The ALJ stated that Plaintiff's "allegations of disabling pain and limitation are simply not supported by the medical evidence to the extent alleged." R. 22. The ALJ noted a "Function Report" questionnaire dated January 11, 2007, in which Plaintiff stated that "her daily activities consisted of cooking breakfast for her husband, preparing his lunch, cleaning up the kitchen, doing the laundry, cleaning the house, and then preparing supper." *Id.* In this report, Plaintiff also claimed that "she was able to do household chores [such as] dusting, sweeping, mopping and ironing," that "she had no problems with her personal care," and that "she was able to go shopping and attend[] church." *Id.* The ALJ noted that "[d]espite her ability to perform" these activities, Plaintiff "indicated that she did not go out a lot because she had diarrhea and was in a

9

lot of pain." *Id.* Plaintiff also claimed that "arthritis made her hands hurt very bad . . . which prevented her from lifting, reaching, etc." and that "diarrhea and pain in her intestine and stomach . . . prevented her from walking." *Id.*

The ALJ noted that on several occasions Plaintiff had "indicated that she was able to ambulate independently and perform[] activities of daily living (ADL's) independently." R. 22. The ALJ also found that the record "contains evidence of a lot of symptom magnification" and "suggests that [Plaintiff] failed to follow-up on recommendations such as refusing to be scheduled for a BE or lab work" and failing to "follow[]-up with a colonoscopy as directed." *Id.* The ALJ stated that these facts "suggest[] that [Plaintiff's] symptoms might not have been as serious as alleged." *Id.*

The ALJ stated that he had considered the opinions of Dr. Ruffing. R. 23. The ALJ specifically referred to a September 4, 2007 questionnaire in which Dr. Ruffing stated that Plaintiff "was not able to engage in sedentary work"; that Plaintiff had pain, stiffness, knots, and numbness in her hands and could only use them for a few minutes; that Plaintiff had "limited fine muscle movements"; that Plaintiff "was unable to stand and walk, in combination, for more than a few minutes during the work day" and "could not even stand up to wash her own dishes"; and that Plaintiff "could stand less than 15 minutes at a time" and "should avoid stooping due to back problems." *Id.* Dr. Ruffing also stated that he doubted Plaintiff could work a whole day or consecutive days, and opined that Plaintiff would have to rest away from her work station for significantly more than an hour. R. 23-24. Dr. Ruffing stated that Plaintiff's memory was fine but that pain would limit her ability to concentrate. R. 24. Dr. Ruffing stated that the basis for these opinions was his physical examination and Plaintiff's history. *Id.*

The ALJ stated that he did not give Dr. Ruffing's opinions controlling weight because they were "not consistent with the record as a whole" and because "[t]here are other factors which contradict his opinions." R. 24. The ALJ referred to his earlier finding that Plaintiff "is able to perform her daily activities with no apparent difficulties." *Id.* The ALJ found that "Dr. Ruffing apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] in formulating his opinions." *Id.* The ALJ also noted that Dr. Ruffing had reported that during one examination of Plaintiff "there was a lot of symptom magnification." *Id.*

### E.     The Appeals Council's Denial

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 3, 2010, and therefore the decision of the ALJ became the final decision of the Commissioner. R. 1-3.

### F.     District Court Review

On August 31, 2010, Plaintiff filed the present action pursuant to Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), seeking judicial review of the Commissioner's final decision denying her claim for SSI. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(a), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On March 10, 2011, Plaintiff filed a brief advancing four specific challenges to the ALJ's decision. First, Plaintiff argued that "[i]n determining that Dr. Ruffing's opinions were not given controlling weight, the ALJ failed to provide persuasive contradictory medical evidence, relied on improper legal statements, and failed to consider evidence." ECF No. 7 at 14. Second, Plaintiff argued that "[t]he ALJ failed to provide valid reasons for finding

[Plaintiff's] fibromyalgia non-severe." *Id.* at 21. Third, Plaintiff argued that the ALJ improperly relied upon the Vocational Expert's response to a hypothetical question that did not incorporate all relevant medical conditions supported by the record. *Id.* at 23. Finally, Plaintiff argued that the ALJ erred in finding her testimony about the severity of her symptoms non-credible. *Id.* at 26.

On April 22, 2011, the Commissioner filed a Memorandum in support of the decision denying Plaintiff's claims. ECF No. 8. Plaintiff filed a response to the Commissioner's Memorandum on May 9, 2011. ECF No. 10. On December 9, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision to deny Plaintiff's claims be reversed and remanded. ECF No. 14. On December 29, 2011, the Commissioner filed a brief objecting to the R&R. ECF No. 15. The Commissioner contends that "[t]he Magistrate Judge's sole basis for recommending reversal and remand . . . was that the [ALJ] did not properly evaluate the opinions of [Dr.] Ruffing," and argues that in fact the ALJ properly evaluated Dr. Ruffing's opinions. *Id.* at 1. Plaintiff responded to the Commissioner's objections on January 26, 2012. ECF No. 19.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to determining whether the correct law was applied and whether the factual findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," or "more than a mere scintilla but . . . somewhat less than a preponderance." *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The role of this Court is not to review the evidence *de novo* or resolve conflicts in the evidence. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971). Rather, the Commissioner's factual determinations "must be upheld if [they are] supported by substantial evidence in the record as a whole." *Howard v. Sec'y of Health & Human Serv.*, 741 F.2d 4, 8 (2d Cir. 1984). "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## III. APPLICABLE LAW

A claimant is considered disabled only if she demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that her physical and/or mental impairments "are of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step evaluation process to determine whether a claimant is disabled. The adjudicator must consider whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment or impairments; (3) had a condition which met or equaled the severity of a Listed Impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4). If the claimant is found to be either disabled or not disabled at any step, no further inquiry is necessary.

If a claimant is found to have one or more severe impairments, the adjudicator must determine whether the impairment or combination of impairments meets, or is medically equivalent to, the criteria of a Listed Impairment. 20 C.F.R. § 416.920(d), 416.925 & 416.926. If the claimant's impairments meet or equal the criteria of a listing and meet the duration requirement, the claimant is found to be disabled. 20 C.F.R. § 416.920(d) & 416.909. Otherwise, the adjudicator must determine the claimant's "residual functional capacity"; that is, the claimant's ability to work despite having a severe impairment. *See* C.F.R. § 416.920(e). The adjudicator then determines whether, based on this residual functional capacity and other relevant factors, the claimant is able to resume past work or perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(f)-(g).

## IV. DISCUSSION

**A.    Dr. Ruffing's Opinions on Plaintiff's Limitations**

    **1.    The Magistrate Judge's Report and Recommendation**

In determining that Plaintiff "has the residual functional capacity to perform a wide range

[of] light work," the ALJ rejected the opinions of Dr. Ruffing for the reasons explained above. R. 18 & 24. The Magistrate Judge found that the ALJ's rejection of Dr. Ruffing's opinions was not based on substantial evidence. ECF No. 14 at 24. The Magistrate Judge noted that Dr. Ruffing "examined Plaintiff numerous times in a three-year span, which gave him opportunities to observe, examine and treat her," and ordered and reviewed various objective medical tests. *Id.* at 21. The Magistrate Judge found that Dr. Ruffing "included frank notes about Plaintiff's complaints when they were not substantiated with objective findings . . . or when he believed Plaintiff was magnifying symptoms." *Id.* The Magistrate Judge found that these notes suggested that, contrary to the ALJ's statement, Dr. Ruffing had not "relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] in formulating his opinions." *Id.*

The Magistrate Judge also found that the ALJ did not provide specific citations to any medical evidence as support for the finding that Dr. Ruffing's opinions were not entitled to controlling weight because they were inconsistent with the record as a whole. ECF No. 14 at 22. The Magistrate Judge noted that the Commissioner's brief presented various citations to Dr. Ruffing's treatment reports that allegedly support the ALJ's finding, but stated that "[t]he Commissioner's post-hoc rationalization does not remedy the deficient analysis by the ALJ." *Id.* The Magistrate Judge further noted that Dr. Ruffing was the only source to offer any opinion regarding Plaintiff's physical limitations. *Id.*

The Magistrate Judge found that the ALJ's statement that Plaintiff "is able to perform her daily activities with no apparent difficulties" was not supported by substantial evidence. ECF No. 14 at 22-23. The Magistrate Judge noted that the ALJ had focused only on specific daily activities described by Plaintiff in her January 2007 "Function Report" but had "not discuss[ed]

15

her response to other SSA forms or her hearing testimony." *Id.* at 23. The Magistrate Judge noted Plaintiff's April 4, 2007 and August 1, 2007 "Disability Report – Appeal" responses in which she stated that multiple health problems were getting worse and causing increasing difficulty with her daily activities. *Id.*

The Magistrate Judge found that "the ALJ did not adequately discuss the limitations from Plaintiff's IBS [irritable bowel syndrome] and frequent diarrhea or the impact that condition would have on" her residual functional capacity. ECF No. 14 at 24. The Magistrate Judge noted that the ALJ found Plaintiff's IBS to be a "severe impairment," meaning that it "significantly limits" Plaintiff's ability to do basic work activities. *Id.* at 25. However, the Magistrate Judge found that the ALJ did not discuss how this condition, which would require Plaintiff to frequently leave her work station to use the bathroom, might affect her residual functional capacity. *Id.* The Magistrate Judge further found that, in discounting Dr. Ruffing's opinion, the ALJ only discussed Dr. Ruffing's September 4, 2007 opinion and did not discuss any portion of his June 2, 2009 opinion. *Id.* As the Magistrate Judge noted, while the September 4, 2007 opinion does not mention Plaintiff's IBS or frequent diarrhea, the June 2, 2009 opinion discusses these problems and the specific limitations caused by them. *Id.*

        **2.**       **The Commissioner's Objections**

Although the Commissioner contends that "[t]he Magistrate Judge's sole basis for recommending reversal and remand . . . was that the [ALJ] did not properly evaluate the opinions of [Dr.] Ruffing," ECF No. 15 at 1, this is not entirely accurate. The Magistrate Judge also found that the ALJ did not discuss Plaintiff's responses to various SSA forms and her hearing testimony, and that the ALJ did not adequately discuss the limitations from Plaintiff's IBS

despite finding it to be a severe impairment. The Commissioner argues that the ALJ properly considered and discounted Dr. Ruffing's opinions. The Commissioner argues that Dr. Ruffing's opinions were not consistent with his own treatment notes, with other medical evidence in the record, and with Plaintiff's own descriptions of her daily activities. The Commissioner further argues that Dr. Ruffing's opinions were properly discounted because they relied heavily on Plaintiff's subjective reports and because, by Dr. Ruffing's own admission, Plaintiff exaggerated her symptoms.

Normally, a treating physician's opinion as to the nature and severity of a claimant's impairments is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, the evidence supporting the physician's opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. *Id.* at § 416.927(d). "Courts often give greater weight to the testimony of a treating physician because the treating physician has necessarily examined the [claimant] and has a treatment relationship with the [claimant]." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quotation omitted). However, the ALJ may give lesser weight to the opinion of a treating physician in the face of persuasive contrary evidence. *Id.* at 654 n.5 (quotation omitted).

At the time Dr. Ruffing provided his June 2, 2009 opinion concerning Plaintiff's limitations, he had been her treating physician for more than three years and had seen her at least

sixteen times. However, the ALJ rejected Dr. Ruffing's 2007 and 2009 opinions on the ground that they were not consistent with the record as a whole. Although the ALJ found that "[t]here are other factors which contradict [Dr. Ruffing's] opinions," R. 24, he did not specifically identify any such medical evidence in the record. Rather, the ALJ appears to have relied entirely upon statements submitted by Plaintiff to find that she "is able to perform her daily activities with no apparent difficulties." *Id.* The ALJ also discounted Dr. Ruffing's opinions because they "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] in formulating his opinions," and because Dr. Ruffing had found on one occasion that Plaintiff appeared to exaggerate her symptoms. *Id.*

Ironically, the ALJ relied quite heavily on Plaintiff's subjective report in rejecting Dr. Ruffing's medical opinions. The ALJ focused on some statements in Plaintiff's January 11, 2007 function report describing her daily activities while ignoring other statements in the same document describing Plaintiff's increasing difficulty in performing these activities because of her pain and illness. The ALJ also failed to address Plaintiff's subsequent disability reports and Plaintiff's 2009 hearing testimony, in which she described a further decline in her functional abilities. The ALJ did not attempt to explain why the subjective reports of Plaintiff upon which he relied in rejecting Dr. Ruffing's opinions were more credible or reliable than the subjective reports upon which Dr. Ruffing relied in formulating his opinions.

The Commissioner identifies portions of various treatment records that he contends are "inconsistent" with Dr. Ruffing's opinions. For example, the Commissioner notes that in October 2006, Dr. Ruffing found that Plaintiff "had a soft abdomen and negative rectal and extremity examinations" and a "good range of motion in her right elbow, adequate, and normal

18

reflexes." ECF No. 15 at 2. The Commissioner similarly notes that in May 2007, Dr. Karns found that "Plaintiff had a normal abdomen with no tenderness to palpation and normal sounds in all quadrants" and that "[a]n abdominal x-ray showed no acute abnormality." Although the Commissioner does not explain how such findings are "inconsistent" with Dr. Ruffing's opinions concerning Plaintiff's limitations, the implication appears to be that these objective observations somehow disprove, or at least do not support, Plaintiff's alleged symptoms and limitations. However, the interpretation of such objective data requires medical expertise. The Court is unable to determine whether such data is consistent with the symptoms and limitations alleged by Plaintiff, and the Commissioner provides no assistance in such an analysis. More importantly, the ALJ did not provide an alternative interpretation of such data in rejecting Dr. Ruffing's opinions.

The ALJ's finding that Plaintiff "is able to perform her daily activities with no apparent difficulties" is not supported by substantial evidence. Furthermore, the ALJ identified no other "persuasive contrary evidence" in the record that would justify his refusal to give Dr. Ruffing's opinions controlling weight. Accordingly, the ALJ's rejection of Dr. Ruffing's opinions is not supported by substantial evidence. The Court also finds that the ALJ failed to address adequately the impact of Plaintiff's irritable bowel syndrome on her residual functional capacity.

**B.     Plaintiff's Other Allegations of Error**

As set forth above, Plaintiff also argues that the Commissioner erred in not finding her fibromyalgia to be a severe impairment, in relying on the answer to an improper question to the Vocational Expert, and in evaluating her credibility. Because the Magistrate Judge recommended that the Commissioner's decision be reversed and remanded based on Plaintiff's

first claim, the Magistrate Judge did not address these remaining claims.  This Court similarly declines to address these claims at this time.  On remand, the ALJ should discuss Plaintiff's fibromyalgia, determine whether it is a severe impairment, and consider whether it, alone or combined with other impairments, limits her residual functional capacity.

## V.  CONCLUSION

After a thorough review of the Report and Recommendation and the record in this case, the court hereby overrules the Commissioner's objections and adopts the Report and Recommendation and incorporates it herein.  The Commissioner's decision is, therefore, reversed and remanded.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
Chief United States District Judge

March 8, 2012
Columbia, South Carolina